Elayne SANDERS, Appellant,

v.

Casie J. VINSON, etc., et al., Appellees.

Supreme Court of Tennessee.

Dec. 5, 1977.

---

2. Any vehicle having not more than three wheels. Sec. 59–103, T.C.A.

Charles Hampton White, Cornelius, Collins, Higgins & White, Nashville, for appellant.

James O. Lanier, County Atty., Dyersburg, for appellees.

## OPINION

HENRY, Justice.

This action arises under the Teachers' Tenure Law (Sec. 49–1401, et seq., T.C.A.) and fairly raises questions relating to the establishment and termination of tenurial status. Plaintiff, in this action against the County Superintendent of Education and the Board of Education of Dyer County, seeks (1) to vacate the action of the Dyer County Board of Education in terminating her employment, (2) to be reinstated to her former teaching position and (3) to recover damages for the breach of her contract of employment. The Chancellor sustained a motion to dismiss made pursuant to Rule 12.02, Tenn.R.Civ.P., *and* decreed that plaintiff was "entitled to full pay and remuneration . . . subject to mitigation to the extent of other earned income," but did not award any specific amount.

We hold the Chancellor's action to be incongruous, incorrect as a matter of law, and incomplete. We, therefore, reverse and remand.

### I.

A proper understanding of the issues here presented demands a detailed and chronological narration of the bizarre history of the events leading up to this lawsuit.

It must be borne in mind that the case is before us solely on the matter of the motion to dismiss, which is akin to a demurrer under former practice in that it admits all matters properly pleaded and, therefore, is a test of the leading pleading. *Holloway v. Putnam County,* 534 S.W.2d 292 (Tenn. 1976). We, therefore, accept the factual averments of the complaint for purposes of this appeal.

Elayne Sanders was employed in 1971 by the Dyer County Board of Education (the Board) as an English teacher. She completed her probationary period at the end of the school year 1973–1974, and thereby became *eligible* for permanent tenure status. Sec. 49–1403, T.C.A.

On 9 April 1974, the Board met in "called" session for the purpose, among other things, of electing teachers for the ensu-

ing school year. The minutes of that meeting show affirmatively that Elayne Sanders "was not recommended by the superintendent." No reasons were assigned. Notwithstanding the non-concurrence of the superintendent, she was reelected. The minutes are silent as to whether the superintendent advised the Board that her reelection would result in tenurial status. Sec. 49–1403, T.C.A.

Two days later, on 11 April 1974, the Board met in "emergency" session and, among other things, reconsidered its action in re-employing Elayne Sanders. While not specifically recited in the minutes, it is averred in the complaint that at this meeting the superintendent and a representative of the State Department of Education represented to the Board that the State Commissioner of Education would not recognize Elayne Sanders for the purposes of salary disbursement under Sec. 49–602(A)(7) and that the State would withhold the appropriate salary disbursement on the authority of Sec. 49–604(B), T.C.A. As a result, the Board voted unanimously to rescind its earlier action in re-employing Sanders. That same date the Superintendent notified her of the action of the Board.

On 18 April 1974, Sanders requested a formal hearing before the Board. On 29 April 1974, the hearing was conducted. At this meeting the superintendent gave no reasons for not recommending her re-employment but indicated that the problem stemmed from longstanding political differences between the Board and him. The Board adjourned after resolving to hold another meeting on the matter, and directed that at that meeting any charges against plaintiff be presented.

On 24 June 1974, the board met in regular session and voted to rescind the action of 11 April 1974. The superintendent was called upon to make a recommendation respecting the employment of Sanders and, in response thereto, advised the Board that he felt "the instruction of the English department could be upgraded by employing other

persons." He did not recommend her re-employment. The Board thereupon proceeded to elect Sanders unanimously for the ensuing school year.

In July 1974, the Board forwarded Sanders a document upon which to acknowledge employment. This document specified the school at which she was to teach and instructed her to contact the principal for her classroom assignment. She indicated her acceptance and returned the document. Thereafter, on 6 August 1974, she was sent a memorandum on the procedures to be followed for opening of the school year, including instructions for in-service training and the execution of contracts.

Sanders reported for in-service training on 19 August 1974 and had worked for a full week when she received a letter from the Superintendent and the Chairman of the School Board, which, omitting the address, salutation and complimentary closing, read as follows:

This is to inform you that the Dyer County Board of Education, in session on August 22, voted to rescind action taken by the board on June 24, 1974, in which you were employed by the board to teach in Dyer County Schools for the 1974–75 School Year.

This action was taken due to a Chancery Court case between the Tennessee Education Association and the Tennessee State Department of Education regarding legality of your employment under T.C.A. 49–602, A, 7 as amended by Chapter 435, Public Acts of 1974.

This is the notice that the appellees rely upon and that appellant challenges.

Sanders was paid for the one week of in-service training on 6 November 1974. On 22 November 1974, she filed suit in the Chancery Court at Nashville against the State Commissioner of Education, the Dyer County Superintendent and the Dyer County School Board, seeking restoration and/or reinstatement, a declaration of her rights and status as a teacher, and a restoration of

proceeds withheld from the State School Fund. The Chancellor concluded that Sanders was seeking review of her discharge and that the action must be brought in Dyer County.

On appeal to this Court we affirmed the Chancellor, holding that the Commissioner of Education was neither a necessary nor a proper party and that venue was in Dyer County. *Sanders v. Carmichael,* 527 S.W.2d 92 (Tenn.1975). The opinion was released 2 September 1975. The instant suit was filed 12 September 1975.

## II.

## HOW TENURE IS ACQUIRED

In spite of the fact that the Teachers' Tenure Act has been in effect for more than a quarter of a century, it is evident that even those affected by it and those charged with its administration do not understand its full import. This section is designed not only to decide this particular lawsuit, but to serve as a primer for the use of *local school boards and public school teachers,* to the end that controversies of this type be minimized.

■ Contrary to the belief which apparently prevails in some quarters, the mere completion of the three-year or twenty-seven month probationary period by a teacher otherwise qualified, does *not* automatically confer permanent tenure. It merely is a condition precedent to *eligibility* for tenure.

■ The conference of tenurial status is dependent not only upon service but also upon affirmative action by the Board of Education. The statute (49–1403) is clear:

Upon completion of the probationary period, any teacher who is *reemployed or retained in the system* is entitled to the tenure status for which she is qualified by college training and certification . . . .

Further, Sec. 49–1402, T.C.A., in defining permanent tenure, specifies that it applies to teachers who meet certain educational requirements, hold valid professional certificates, have completed the probationary period and who are "reemployed by the board for service after the probationary period." *See State v. Lunsford,* 207 Tenn. 33, 336 S.W.2d 20, 21 (1960).

In *Snell v. Brothers,* 527 S.W.2d 114 (Tenn.1975), we reaffirmed the language of *Lunsford,* holding that tenure did not attach unless, after completing the probationary period, the teacher was retained or reelected to the position.

■ The Board and the Superintendent insist that as a condition of tenure the employment by the Board must be made upon the recommendation of the Superintendent and that absent his recommendation there can be no tenure. We find nothing in the law to support this contention.

That portion of the general education law covering the local administration of schools is embraced in Sec. 49–201, et seq., T.C.A. Under Sec. 49–224 it is made the duty of the board to assign to its superintendent duties which include:

(10) To recommend to the board of education, supervisors, teachers, clerical assistants, and other employees in the schools.

This statutory duty, however, is not related to tenure. It originated as a part of Chapter 115, Public Acts of 1925, and, therefore, pre-dates the tenure law by a quarter of a century; and nowhere is a recommendation of the superintendent made a condition of employment. Sec. 49–214(1), T.C.A., vests in the local board of education the full and unconditional right to elect teachers.

The supremacy of the local board of education over the superintendent of schools is recognized in *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635 (1956). There the Court said:

The duties of the superintendent are highly important but they do not with

respect to essential features of school management override the authority of the school board. Naturally the superintendent's advice will be given much consideration, but the ultimate responsibility and the finality as to choice rests with the school board. It may act on its own sound judgment as to what is required by the public welfare, and contrary to advice from any source, even from the superintendent of schools. The school board is still the master and not the servant. 201 Tenn. 190–191, 297 S.W.2d 640.

*See also Benson v. Hardin County,* 173 Tenn. 246, 116 S.W.2d 1025 (1938) (holding that the exclusive management and control of county schools is in the county board of education).

■ We do not intend to denigrate the office of superintendent. We fully recognize the importance of this position and the prestige it rightfully carries; but under the statutory scheme of the general education law of this state, the school board is the dominating entity.

■ We hold that the recommendation of the superintendent is not essential to the employment, re-employment or retention of a public school teacher. Therefore, the absence of his or her recommendation is irrelevant to the issue of tenure.

We do not overlook the last provision in Sec. 49–1403, T.C.A.:

provided that the superintendent shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status.

■ The sole, and we think self-evident, purpose of this proviso is to insure that the board knows that re-employment will confer tenure. The record is silent as to whether this notification was made. In the context of this case, we cannot assume from a silent record that the board was unaware of the consequences of its action. In reviewing the action of a trial court in sustaining a motion to dismiss, it is incumbent upon us to construe the complaint liberally in favor of the plaintiff. *Holloway v. Putnam County, supra.* Further, for present purposes, we will presume that the superintendent performed his statutory duty and that proper notification was given.

We have not overlooked the provisions of Sec. 49–602, T.C.A., establishing a minimum foundation school program for grades kindergarten through twelve, and particularly subsection A(7) thereof, which provides in pertinent part:

In order for any professional position, together with the salary therefor . . to be included in the minimum foundation school program, or to be paid from any public funds, the person filling such professional position *shall be recommended by the local superintendent of schools* and elected by the local board of education. However, such failure of recommendation shall not affect an employed teacher's rights *as otherwise set forth in this title.* (Emphasis supplied).

■ The rights of tenurial teachers are "otherwise set forth in this title." Further compliance with this section is a condition precedent to the funding of a teaching position but not to the acquisition of tenure. As we phrased it in *Sanders v. Carmichael, supra* :

The fact that funds may or may not be withheld from a school system by the Commissioner of Education is not determinative of, or in any way material to, the rights or duties of the plaintiff or the Dyer County School Board under the employment contract which is at issue in this case, or under the Teachers' Tenure Law. 527 S.W.2d 94.

The source of the funds necessary to pay the salary of a teacher is wholly separate from the acquisition of tenure. Local school authorities must know that the conference of tenure results in salary payments, either from minimum foundation funds supplied by the state, or from county funds, and that state funds are not availa-

ble absent the recommendation of the superintendent.

█ We hold that under the facts as pleaded in this case, and for purposes of this review, Sanders acquired tenure as a result of the action of the Dyer County Board of Education in electing her to a teaching position. The proof presented on remand may produce a different finding of fact.

### III.

### HOW TENURE IS TERMINATED

Permanent tenure is terminated by attainment of the maximum teaching age, resignation, retirement or dismissal. Sec. 49–1401(4)(a), T.C.A.

A tenurial teacher may be dismissed for "incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination, as defined in Sec. 49–1401." Sec. 49–1412, T.C.A. The charges must be "made in writing, specifically stating the offenses which are charged, and shall be signed by the party or parties making the charges." Sec. 49–1414, T.C.A.

█ The charges which would justify the dismissal of a tenurial teacher must be those specified in Sec. 49–1412, as these grounds are defined in Sec. 49–1401. Under this record the charge prompting Sanders' dismissal, according to the official minutes of the Board, was that the Superintendent "felt that the instruction of the English department could be upgraded by employing other persons."

The reason assigned by the Chairman of the Board and the Superintendent in their joint letter of August 23, 1974, wherein they advised her of her dismissal, was:

This action was taken due to a Chancery Court case between the Tennessee Education Association and the Tennessee State Department of Education regarding the legality of your employment under T.C.A. 49–602, A, 7. . . .

█ Assuming the existence of such a lawsuit, we cannot conceive of how litigation to which she was not a party could be treated as a reason for her dismissal. On the basis of the record before us, we hold that there was a total failure to comply with Sec. 49–1412 relating to grounds of dismissal. The result is that the notice she was given was defective in the first instance in that it gave her no notice of any valid reason for her dismissal. Further, there was no compliance with so much of Sec. 49–1415, T.C.A., as requires that along with the notice the teacher must be given "a copy of a form which shall be provided by the state commissioner of education advising the teacher as to her legal duties, rights and recourse under the terms of this chapter."

We therefore hold that the grounds were inadequate and the notice defective.

█ It requires the receipt of notice of charges sufficient to warrant the dismissal of a teacher to trigger the provisions of Sec. 49–1416, T.C.A., providing for a public hearing pursuant to demand by the teacher. Having received notice of no valid charges, Sanders was not required legally to demand a hearing.

█ The Board contends that the instant suit was not timely filed in view of the requirement of Sec. 49–1417 that judicial review may be obtained by petition filed in Chancery Court within thirty days from the receipt by the teacher of notice of the decision of the board. Again, this section contemplates the preferment of valid written charges of conduct made a ground for dismissal. The dismissal of a tenurial teacher in the absence of such charges is invalid. The Board of Education may not invoke the protection of a statutory scheme, the principal requirements of which it ignored.

We find that Sanders, at all times, acted with diligence and promptness and that her suit is not barred by Sec. 49–1417, T.C.A.

### IV.

On remand, and after appropriate pleadings and proof, the Chancellor will make

and enter findings of fact relating to the basic issues of tenure and the termination thereof. Should the proof indicate that the facts are as we have found them on the basis of the pleadings only, the Chancellor will determine appellant's right to reinstatement, back pay, and other damages. We direct that action on remand be expedited to the end that this controversy be settled once and for all.

Reversed and remanded.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.

### ADDENDUM

Tax costs against the Dyer County Board of Education.

The Clerk and Master's cost bill for the preparation of the transcript will be reduced by deducting therefrom the cost of improperly inserting in the record various memoranda of law and appendages thereto. This improperly included matter consists of 54 pages of an 88 page transcript or 61% of the total transcript. *See* Supreme Court Rule 7; Tennessee Clerks of Court Manual, Vol. I, Part II, 4.1(H).